**KAUFMAN DOLOWICH & VOLUCK, LLP**
Barbara L. Harris Chiang (SBN 206892)
Elizabeth Williams (SBN 92374)
425 California Street, Suite 2100
San Francisco, California 94104
Telephone: (415) 926-7600
Facsimile: (415) 926-7601
Email: bchiang@kdvlaw.com
ewilliams@kdvlaw.com

Attorneys for Defendant
JEFFREY KEPPLE in his official capacity as
Medical Director of Northern California EMS, Inc.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARIO GURROLA and FERNANDO HERRERA,<br><br>Plaintiff,<br><br>v.<br><br>DAVID DUNCAN, in his official capacity as director of the California Emergency Medical Services Authority; and JEFFREY KEPPLE, in his official capacity as Medical Director of Northern California EMS, Inc.; and TROY FALCK, in his official capacity as medical director of Sierra-Sacramento Valley Emergency Medical Services Agency,<br><br>Defendants. | Case No.: 2:20-CV-01238-JAM-DMC<br><br>Action Filed: June 19, 2020<br><br>**DEFENDANT JEFFREY KEPPLE'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT PURSUANT TO FED. RULE OF CIV. PROC., SECTION 12(b)(6)**<br><br>Date: December 8, 2020<br>Time: 1:30 p.m.<br>Courtroom: 6, 14th Floor<br>Judge: Hon. John A. Mendez |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION……..………………………………………………………………… 1

II. SUMMARY OF RELEVANT FACTS………………….....………………………….. 2

    A. The Parties…………………………………………………………………..…........ 2

    B. Twice Convicted Felon Gurrola Is Denied EMT Certification……………..……… 2

    C. Twice Convicted Felon Herrera Never Applied for EMT Certification…………. 3

    D. Cal. Code Regs. §§ 100214.3(c)(3) and (c)(6)…………………………….…....... 3

III. STATEMENT OF ISSUES TO BE DECIDED ………………………………………… 4

IV. LEGAL AUTHORITY…………………………..…………………………………….. 4

    A. Legal Standard on Motion to Dismiss …………………..…………………….….. 4

    B. Legal Standard for Constitutional Challenge to a Statute/Regulation ………..… 6

V. ARGUMENT……………………………………..…………………………………….. 6

    A. The doctrines of Res Judicata and Collateral Estoppel Mandate Dismissal of Plaintiff Gurrola's Action Against KEPPLE without Leave to Amend ………..... 6

    B. Plaintiff Herrera's Claims Are Not "Ripe"……………………………..…… 10

    C. Plaintiff Herrera Lacks Standing to Assert any Action against KEPPLE………... 11

    D. Plaintiffs have not/cannot State a Plausible Equal Protection Claim Against KEPPLE and None Exists………………………………………….…… 11

    E. Plaintiffs have not/cannot State a Plausible Due Process Claim Against KEPPLE…………………………………………………………………………... 13

    F. Plaintiffs' Purported "Privileges Or Immunities" Claim Is Unintelligible……….. 15

VI. CONCLUSION ……………………………………………………………………... 15

i

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................................................. 4

*Balistreri v. Pacifica Police Dep't,* 901 F.2d 696 (9th Cir. 1990) .................................................. 5

*Baranchik v. Fizulich,* 10 Cal.App.5th 1210 (2017) ................................................................. 13

*Baruchik,* 10 Cal.App.5th at 1225 ........................................................................................ 13

*Bassett v. ABM Parking Servs., Inc.*, 883 F.3d 776 (9th Cir. 2018) ........................................ 10, 11

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................................ 5

*Bishop Paiute Tribe*, 863 F.3d 1144 (9th Cir. 2017).) ............................................................... 10

*Blumenthal v. Board of Medical Examiners,* 57 Cal.2d 228 (1962) ............................................ 12

*Castillo v. City of Los Angeles,* 92 Cal.App.4th 477 (2001) ........................................................ 8

*City of Cleburne v. Cleburne Living Center, Inc.,* 473 U.S. 432 (1985) ................................... 6, 11

*City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1974).) ........................................................... 11

*Clare v. State Bd. of Accountancy*, 10 Cal.App.4th 294 (1992) .................................................. 12

*Clark v. Jeter*, 486 U.S. 456 (1988) ........................................................................................ 6

*D'Amico v. Board of Medical Examiners*, 11 Cal.3d 1 (1974) ................................................... 12

*Dandridge v. Williams,* 397 U.S. 471 (1970) ........................................................................... 6

*Griffiths v. Superior Court*, 96 Cal.App.4th 757 (2002) .............................................. 12, 13, 15

*Hafter v. Clark*, 992 F.Supp.2d 1063 (D. Nev. 2014) ............................................................... 6

*Heller v. Doe,* 509 U.S. 312 (1993) ......................................................................................... 6

*Hi-Desert Med. Ctr. v. Douglas,* 239 Cal.App.4th 717 (2015) ..................................................... 7

*Hughes v. Board of Architectural Examiners,* 17 Cal.4th 763 (1998) ......................................... 12

*Latta v. Otter*, 19 F.Supp.3d 1054, 1072–73 (D. Idaho), *aff'd*, 771 F.3d 456
(9th Cir. 2014) ..................................................................................................................... 12

*Lee v. City of Chicago,* 330 F.3d 456 (7th Cir 2003) ................................................................ 14

*Lucido v. Sup.Ct. (People)* 51 Cal.3d 335 (1990) ..................................................................... 8

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) ................................................................. 10, 11

*Moustafa v. Board of Registered Nursing,* 29 Cal.App.5th 1119 (2018) ..................................... 14

ii

*Murray v. Alaska Airlines, Inc.,* 50 Cal.4th 860 (2010) ................................................................8, 9

*Pacific Lumber Co. v. State Water Resources Control Bd.,* 37 Cal.App.4th 921 (2006).......................................................................................................................................... 9

*Romer v. Evans,* 517 U.S. 620 (1996) ......................................................................................... 12

*Sail'er Inn, Inc. v. Kirb,* 5 Cal.3d 1 (1971) .................................................................................. 12

*San Antonio Independent School Dist. v. Rodriguez,* 411 U.S. 1 (1973) ....................................... 6

*Sierra Club v. Morton*, 405 U.S. 727 (1972). ............................................................................. 11

*Skulason v. California Bureau of Real Estate,* 14 Cal.App.5th 562 (2017) ................................. 13

*Slaughter-House Cases,* 83 U.S. (16 Wall.) 36 (1873) ................................................................ 15

*Spokeo, Inc. v. Robins*, 136 U.S. 1540 (2016) ............................................................................ 10

*Takahashi v. Board of Ed. Of Livingston Unified School Dist.,* 202 Cal.App.3d 1464 (1988).................................................................................................................................. 7

*Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053 (9th Cir. 2004) ........................................................................................................................................ 5

*Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134 (9th Cir. 2000).) ........................... 10

*Warth v. Seldin*, 422 U.S. 490, 498 (1975) .................................................................................. 11

*Wassmann v. South Orange County Comm. College Dist.,* 24 Cal.App.5th 825 (2018)......................................................................................................................................... 7

*Williamson v. Lee Optical Co.*, 348 U.S. 483 (1955) .................................................................. 12

*Zevnik v. Superior Court,* 159 Cal.App.4th 76 (2008) .................................................................. 8

**STATUTES**

California Emergency Medical Services Authority (EMSA) ....................................................2, 14

Code of Civil Procedure section 1094.5 ........................................................................................ 9

California Penal Code §1203.4b ......................................................................................... 1, 14, 15

**COURT RULES**

Federal Rule of Civil Procedure 12(b)(6) ...................................................................................... 4

**OTHER AUTHORITIES**

Cal. Code Regs. §100214.3(c)(3) and (c)(6) ........................................................................1, 3, 15

iii

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiffs DARIO GURROLA ("Plaintiff Gurrola") and FERNANDO HERRERA ("Plaintiff Herrera") (collectively "Plaintiffs"), twice convicted felons, challenge the enforcement of 22 Cal. Code Regs. §100214.3(c)(3) and (6) on the ground the regulations violate the Fourteenth Amendment. California Code Regs, §100214.3(c)(3) bars emergency medical technician ("EMT") certification to persons convicted of two or more felonies, and §100214.3(c)(6) bars EMT certification to individuals convicted and released from incarnation during the preceding ten (10) years for any offence punishable as a felony. (First Amended Complaint ("FAC") p. 1, ¶ 1:2-13, ¶2:14-20,  ¶3:21-p. 2, line 2, ¶5:5-21, p. 3, ¶3:1-5.)

As demonstrated herein, Plaintiffs' FAC, as a whole, and, each of the three causes of action fail because: (1) Plaintiff Gurrola's claims against KEPPLE are barred by the doctrines of res judicata and collateral estoppel, and, because no claim lies based on KEPPLE's admitted adherence to the law; and, (2) Plaintiff Herrera's claims are barred by the doctrine of ripeness, and, Plaintiff lacks standing to state claims against KEPPLE.  Alternatively, should this Court consider the claims "on the merits", the claims fail on the ground Plaintiffs have not and cannot state plausible claims for violation(s) of  the Equal Protection and Due Process Clauses of the Fourteenth Amendment because the statutory classification(s) are rationally related to a legitimate governmental purpose; there is a rational basis for the regulations barring EMT certification to twice-convicted felons and/or persons convicted of a felony or crime punishable as a felony within ten (10) years of their release from incarceration.[1] Plaintiffs fail to state a plausible claim that others similarly situated were treated differently, and, because even assuming the right to pursue one's chosen profession is recognized as a protected fundamental right (which it is not), the statutes/regulations at issue provide legally sufficient avenues of redress.  This is especially true with the recent enactment of Penal Code §1203.4b, which provides an avenue for EMT certification to certain felons previously prohibited such certification.

Plaintiffs' hyperbole that the regulations are "harsh, , "do nothing to protect the public"

---

[1] Notably, although Plaintiffs challenge California Code Regs, §100214.3(c)(6) barring EMT certification to persons convicted of a felony or crime punishable as a felony within 10 years of their release from incarceration, here, both Plaintiff Gurrola and Herrera were each admittedly convicted of two felonies.

(FAC p. 2, ¶4:7-11) and are "doubly irrational" because the State uses prisoners convicted of felonies to fight wildfires and felons to work as firefighters (FAC p. 1, ¶1:8-13); and, bars Plaintiffs from being an EMT for the rest of their lives (FAC p. 1, ¶2:19-20, p. 11, ¶83:9-11) is simply not enough to successfully challenge the regulations at issue and to overcome the fatal defects of the FAC or otherwise save Plaintiffs' non-meritorious respective case.

Plaintiffs' claims against KEPPLE must be dismissed in the entirety, without leave to amend.

## II.     SUMMARY OF RELEVANT FACTS

### A.     The Parties

Plaintiffs Gurrola and Herrera are individuals, each with two felonies on their respective records. (FAC p. 1, ¶2:14-15, p. 8, ¶ 52:3-4.)  Gurrola was denied EMT certification, (FAC p. 6, ¶33:5, and, Herrera has never applied for EMT certification. (FAC p. 16, ¶136: 22-23.)

Defendant David Duncan is the director of the California Medical Services Authority, the state agency that regulates EMT certification. (FAC p. 4, ¶8:1-4.)  KEPPLE is the medical director of Northern California EMS, Inc. ("Nor Cal EMS").  TROY FALCK ("Falck") is the medical director of Sierra-Sacramento Valley Emergency Medical Services Agency ("S-SV EMS"). Nor Cal EMS and S-SV EMS are two of **33** local EMS agencies (known as "EMSA") in the State of California servicing 58 California counties that administers EMT certification. (https://emsa.ca.gov/local-ems-agencies/, Request for Judicial (RJN) Exhibit B, FAC p. 3, ¶ 12:18- p. 4:2.)

Plaintiffs' FAC fails to explain why, if prospective injunctive relief is sought prohibiting adherence to a regulation that must be followed by 33 agencies, only two EMSA medical directors, KEPPLE and Falck, are defendants in this action. No reasonable explanation exists.

### B.     Twice Convicted Felon Gurrola Is Denied EMT Certification

Plaintiff Gurrola is a seasonal firefighter living in Alturas, California. (FAC ¶ 8, at p.3:5- 6.) Commencing in 2003 and thereafter, Plaintiff Gurrola was convicted of at least four (4) felonies and misdemeanors, of which all but two were reduced to misdemeanors and later dismissed; 2003 and 2005 felonies remain on his record. (FAC ¶ 17, at p. 4:17- 20.) Plaintiff Gurrola, "learned to fight fires" while in jail  (FAC ¶ 2, at p. 1:16-18), when he served in a fire camp while in custody as a juvenile. (FAC ¶ 23, at p. 5:10-11.) In the past decade he earned firefighting and EMT credentials

(FAC ¶ 24, at p. 5:12-13) and applied to North California EMS for, and, was denied EMT certification. (FAC ¶ 32-33. p. 6:3-5.)

Plaintiff 's appeal of denial of EMT certification was heard by an administrative law judge ("ALJ") who upheld the denial, , explaining "Nor Cal EMS is prohibited from granting [Dario] an EMT certification, even on a probationary basis, based on his two felony convictions." (FAC ¶ 34-36, at p. 6:6-14; RJN Exhibit A.)

After the ALJ decision, Nor Cal EMS confirmed with Plaintiff that it "is bound by the California Code of Regulations …. Unfortunately, Nor Cal EMS cannot issue an EMT certification to you." (FAC ¶ 37, at p. 6:15-19.)   Plaintiff did not seek review of the ALJ decision as provided by law.

### C. Twice Convicted Felon Herrera Never Applied for EMT Certification

Plaintiff Herrera is a California Conservation Corps. member stationed in Watsonville, California.  (FAC ¶ 9, at p. 3:7-9.)  Plaintiff Herrera was convicted of two felonies and was sent to prison. (FAC ¶ 52-53, at p. 8:3-5.) While in jail Plaintiff Herrera served in fire camp. (FAC ¶ 84, at p. 11:9-11.) He was released from prison in 2018 and completed parole in 2019.  (FAC ¶ 58, at p. 8:14.) Plaintiff Herrera took and passed an EMT training class in 2020 but has no taken no further steps toward obtaining EMT certification because "he knows his record makes it pointless." (FAC ¶ 62-63, at p. 8:21-23), and, his criminal record forever prohibits him from being certified as an EMT.  (FAC ¶ 64, at p. 9:1-2.)

### D. Cal. Code Regs. §§ 100214.3(c)(3) and (c)(6)

Pursuant to 22 Cal. Code Regs. § 100214.3 (c)(3), EMT certification "shall" be denied if the applicant "[h]as been convicted of two (2) or more felonies," and under  subsection (c)(6) if the applicant "[h]as been convicted and released from incarceration . . . during the preceding ten (10) years for any offense punishable as a felony."  (FAC ¶ 93-95; at 12:14-21.)  Medical directors of local emergency medical services agencies, including Defendant KEPPLE "must and do follow this regulation. Dario's application is just one example." (FAC  ¶ 97, at p. 13:1-2.)

Plaintiffs also allege that enactment of A.B. 2147 (California Penal Code § 1203.4b), which

allows some former inmate firefighters to seek discretionary expungement of some convictions, does not address Plaintiff Gurrola's situation because he did not serve in a fire camp while incarcerated for his operative convictions; he "appears" to be ineligible for expungement (FAC ¶ 87, at p. 11:17-19.) Plaintiffs allege that enactment of the statute does not address the harm to both Plaintiffs' Gurrola and Herrera because the expungement process would require them to file petitions in courts far from where they live (or find lawyers to do so), and those petitions could be denied according to judges' discretion. (FAC ¶ 88, at p. 11:20-12:2.)

### III.  STATEMENT OF ISSUES TO BE DECIDED

The issues presented for decision by this Motion to Dismiss are:

1. Whether Plaintiff Gurrola's claims barred in the entirety by the doctrines of res judicata and collateral estoppel;
2. Whether Plaintiff Herrera's claims are barred under the doctrine of ripeness;
3. Whether Plaintiff Herrera has standing to pursue an action against Defendant KEPPLE;
4. Whether Plaintiffs' "Equal Protection" claim states facts sufficient to constitute a plausible claim against Defendant KEPPLE;
5. Whether Plaintiffs' "Due Process" claim states facts sufficient to constitute a plausible claim against Defendant KEPPLE;
6. Whether Plaintiffs' "Privileges or Immunities" claim states facts sufficient to constitute a plausible claim against Defendant KEPPLE.

### IV.  LEGAL AUTHORITY

#### A.  Legal Standard on Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal when a complaint fails to state a claim upon which relief can be granted. (*See* Fed.R.Civ.Pro. 12 (b)(6).)  When deciding motions to dismiss under Rule 12(b)(6), the court must apply a "plausibility standard," guided by "[t]wo working principles." (*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).)  First, although the court must accept all factual allegations as true, this tenet is "inapplicable to legal conclusions[.]" (*Id.*)

Second, only complaints that state a "plausible claim for relief" may survive a Rule 12(b)(6) motion to dismiss. (*Id.* at 679.) "A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." (*Id.* at 678.) A plaintiff must provide "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged; "a standard that requires "more than a sheer possibility that a defendant has acted unlawfully." (*Id.*) If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible," they "must be dismissed." (*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Iqbal*, 556 U.S. at 669.)

A complaint fails to state a claim if it does not allege facts necessary to support a cognizable legal claim. (*See Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1990) ("Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.").)

A court is not "bound to accept as true a legal conclusion couched as a factual allegation." (*Iqbal, supra,* 556 U.S. at 678-679.) "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (*Id.* at 1949.) "[B]are assertions . . . amount[ing] to nothing more than a 'formulaic recitation of the elements'" are not entitled to an assumption of truth. (*Id.* at 1951 (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007).)

To withstand a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." (*Twombly*, 550 U.S. at 570.) Facial plausibility exists when the plaintiff pleads facts that allow the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. (*See Iqbal*, 556 U.S. at 678.) ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.") (internal quotation marks omitted). A claim for relief is not plausible if, after taking the complaint's non-conclusory factual allegations as true, a lawful alternative explanation appears a "more likely" cause of the complained action. (*Iqbal*, 556 U.S. at 680.) Dismissal without leave to amend is appropriate where amendment would be futile. (*See, e.g., Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004).)

### B. Legal Standard for Constitutional Challenge to a Statute/Regulation

In considering whether state legislation violates the Equal Protection Clause of the Fourteenth Amendment, U.S. Constitution, the Court applies different levels of scrutiny to different types of classifications. At a minimum, a statutory classification must be rationally related to a legitimate governmental purpose. (*San Antonio Independent School Dist. v. Rodriguez,* 411 U.S. 1, 17 (1973); *Clark v. Jeter*, 486 U.S. 456, 461 (1988), "to withstand intermediate scrutiny, a statutory classification must be substantially related to an important governmental objective.")

A law that neither targets a suspect class nor burdens a fundamental right is subject to rational basis scrutiny. (*Heller v. Doe,* 509 U.S. 312, 319–21 (1993).) The Court in such cases presumes the law is valid unless the challenger can show the difference in treatment bears no rational relation to a conceivable government interest. (*Id.*) "A classification does not fail rational-basis review because it 'is not made with mathematical nicety or because in practice it results in some inequality.'" (*Id.* at 321 (quoting *Dandridge v. Williams,* 397 U.S. 471, 485 (1970).) But, even under this most deferential standard, the "State may not rely on a classification whose relationship to the asserted goal is so attenuated as to render the decision arbitrary or irrational." (*City of Cleburne v. Cleburne Living Center, Inc.,* 473 U.S. 432, 446 (1985).) For this reason, courts "insist on knowing the relation between the classification adopted and the object to be attained." (*Heller,* 509 U.S. at 321 (explaining the classification must "find some footing in the realities of the subject addressed by the legislation").)

## V. ARGUMENT

### A. The Doctrines of Res Judicata and Collateral Estoppel Mandate Dismissal of Plaintiff Gurrola's Action Against KEPPLE without Leave to Amend.

Federal courts give state administrative agency decisions the same preclusive effect as the state would, so long as the administrative proceeding provided minimum procedural requirements of the Due Process Clause of the Fourteenth Amendment. (*Hafter v. Clark*, 992 F.Supp.2d 1063 (D. Nev. 2014).)

Under the doctrine of res judicata or "claim preclusion," a valid final judgment is conclusive

of a claim or defense and bars all parties and persons in privity with the parties from relitigating any issues material to the claim or defense that were or could have been adjudicated in the prior action. If the judgment is for Defendant, Plaintiff is barred from bringing a subsequent action on the claim. (*Takahashi v. Board of Ed. Of Livingston Unified School Dist.,* 202 Cal.App.3d 1464, 1473-1474 (1988).) The doctrines of res judicata and collateral estoppel apply in administrative adjudication. (*Id.*)

In *Takahashi,* a valid final judgment affirming an administrative decision by the Commission on Professional Competence, that "cause" existed for a school district to dismiss Plaintiff teacher on the basis of her competency was res judicata; the teacher's subsequent challenge against the district and some of its employees for wrongful termination and violation of her civil and constitutional rights was forever barred. Finding the *same primary right* - the contractual right to employment - was at stake in the prior and subsequent actions, despite that the actions sought different remedies, the subsequent action was barred. The Court noted that the teacher could have raised the issues of a violation of her constitutional and civil rights as a defense in the proceedings before the Commission; her failure to do so forever barred the later action. (*Takahashi* at p. 1474-1477.)

In *Hi-Desert Med. Ctr. v. Douglas,* 239 Cal.App.4th 717, 731-736 (2015), the doctrine of res judicata barred a subsequent action involving the same parties and the *same primary right*. In that case, a hospital prevailed in a writ proceeding invalidating a statute limiting Medicaid reimbursement rates to noncontract hospitals. After the hospitals' administrative action challenging that statutory cap was dismissed, hospitals brought a subsequent mandamus proceeding seeking to reverse the dismissal of the underlying administrative action and seeking recoupment of financial reimbursement from the Department of Health Care Services. The action was held barred by res judicata – both actions involved the same parties and the *same primary right* – the statute's alleged deprivation of a higher level of Medicaid reimbursements to noncontract hospitals. A monetary remedy could have been sought in the first action; that hospitals failed to do so was their choice.

Similarly, in *Wassmann v. South Orange County Comm. College Dist.,* 24 Cal.App.5th 825, 243-849 (2018), a college employee was discharged for unprofessional conduct and failed to raise the

issue of illegal discrimination at a hearing before an Administrative Law Judge. The ALJ's finding in favor of the College was upheld on writ of mandamus in the trial court. The employee's later action against the College for racial and age discrimination and harassment was barred by res judicata; the employee could have raised the discrimination claims at the ALJ hearing and did not.

Under the doctrine of collateral estoppel or "issue preclusion", issues argued and decided in a prior proceeding cannot be relitigated in a subsequent proceeding when the following elements are met: (1) the issue sought to be precluded from relitigation is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the former proceeding; (3) the issue was "necessarily decided" in the former proceeding; (4) there was a full and fair opportunity to litigate the issue in the former proceeding; (5) the decision in the former proceeding was final and on the merits; and, (6) the party against whom issue preclusion is sought is the same as, or in privity with, a party in the former proceeding. (*Lucido v. Sup.Ct. (People),* 51 Cal.3d 335, 341 (1990); also see *Castillo v. City of Los Angeles,* 92 Cal.App.4th 477, 481 (2001) ("issue preclusion is not limited to barring relitigation of court findings; it also bars the relitigating of issues which were previously resolved in an administrative hearing by an agency acting in a judicial capacity); *Zevnik v. Superior Court,* 159 Cal.App.4th 76 (2008).)

Although application of collateral estoppel is not automatic even when the above elements are met, the doctrine will be applied when its application furthers the public policies of preserving the integrity of the judicial system, promoting economy and protecting litigants from harassment or vexatious litigation. (*Lucido,* 51 Cal.3d at 342-343.)

A party's failure to challenge an agency's investigatory finding on a complaint despite the opportunity to do so at an adjudicatory hearing that is judicial in nature collaterally estops the party from pursuing a new challenge on the same complaint in court; the failure to challenge the adverse findings is treated the same as if the party had litigated the issue at the hearing and lost. (*Murray v. Alaska Airlines, Inc.,* 50 Cal.4th 860, 866-879 (2010), wherein doctrine was applied when, in a voluntary administrative proceeding, a party who failed to challenge findings before a federal ALJ at a formal hearing and to obtain judicial review of the ALJ's decision, was found to have "forfeited"

his right to a formal adversary hearing of record and was bound by the prior decision in a later case.. (*Murray,* 50 Cal.4th at 866-879.) The key issue is the "opportunity to litigate" – the opportunity to raise an issue in a prior proceeding but failing to do so. (*Murray,* 50 Cal.4th at 878-879.)

Here, KEPPLE is the Medical Director of Nor Cal EMS – 1 of 33 agencies – that issues EMT certification in the State of California. After Plaintiff Gurrola's application for EMT certification to Nor Cal EMS was denied, Plaintiff Gurrola appealed the decision, thereby, bringing the issue of Plaintiff Gurrola's right to EMT certification to a hearing before an ALJ. Plaintiff Gurrola and Nor Cal EMS had the opportunity to present evidence at the hearing before the ALJ. The ALJ upheld denial of Plaintiff Gurrola's EMT certification pursuant to decision dated December 5, 2019 (RJN, Exhibit A) on the ground that Plaintiff was precluded from EMT certification because he had two felony convictions on his record and had not shown requisite rehabilitation. Plaintiff Gurrola did not seek review of the ALJ's decision by writ of mandamus pursuant to California Code of Civil Procedure section 1094.5, and the ALJ decision denying Plaintiff Gurrola's EMT certification based on his two felony convictions is final.

Clearly, Plaintiff's hearing before the ALJ was "judicial in nature." Plaintiff Gurrola was provided an opportunity to present and challenge the evidence at the adversarial hearing before the ALJ and the ALJ provided a written decision. (*Pacific Lumber Co. v. State Water Resources Control Bd.,* 37 Cal.App.4th 921, 944 (2006).) Although Plaintiff Gurrola should have raised the issue of the "constitutionality" of the regulation precluding issuance of an EMT certification based on his record at the hearing before the ALF, he did not. And although Plaintiff should have sought review of the ALJ's decision by way of writ proceeding, he did not.

Instead, Plaintiff filed this later separate action against KEPPLE purportedly challenging the constitutionality of the regulations essentially seeking to "relitigate" the issue of his right to and denial of EMT certification.

Plaintiff Gurrola's attempt to circumvent the consequences of a final adverse ruling which he failed to seek appropriate review on by re-casting his request for relief "into the future" cannot be tolerated.

Based on the foregoing, application of the doctrines of res judicata and collateral estoppel mandate that Plaintiff's claims against KEPPLE be dismissed in the entirety without leave to amend.

### B. Plaintiff Herrera's Claims Are Not "Ripe"

Article III of the Constitution empowers Courts to adjudicate only "live cases or controversies," not "to issue advisory opinions [or] to declare rights in hypothetical cases." (*Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000).) "[R]ipeness is 'peculiarly a question of timing,' designed to 'prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.' " (*Id.*) (citation omitted). "Although ripeness, like other justiciability doctrines, is 'not a legal concept with a fixed content or susceptible of scientific verification,' the Supreme Court has observed that the doctrine 'is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction.' " (*Id.*) (citation omitted).

"For a case to be ripe, it must present issues that are 'definite and concrete, not hypothetical or abstract.'" (*Id.*) (citations omitted).) "Constitutional ripeness is often treated under the rubric of standing because 'ripeness coincides squarely with standing's injury in fact prong,'" (*Bishop Paiute Tribe*, 863 F.3d 1144, 1153 (9th Cir. 2017).) "[T]the focus of our ripeness inquiry is primarily temporal in scope, ripeness can be characterized as standing on a timeline." (*Thomas*, 220 F.3d at 1138.)

Under well-established case law a plaintiff must have suffered an 'injury in fact'—"an invasion of a legally protected interest" which is (a) "concrete and particularized," and (b) "actual or imminent, not conjectural or hypothetical." (*Lujan v. Defs. of Wildlife*, 504 U.S. 555, (1992) (citations omitted).) "[T]he injury-in-fact requirement requires a plaintiff to allege an injury that is both 'concrete and particularized.' " (*Spokeo, Inc. v. Robins*, 136 U.S. 1540, 1543 (2016) (citations omitted).) "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.' " (*Id.* at 1548) (citations omitted). For an injury to be concrete, it must " 'actually exist." (*Id.* at 1548.) In other words, it is 'real, and not abstract.' " (*Bassett v. ABM Parking Servs*.,

*Inc.*, 883 F.3d 776, 779 (9th Cir. 2018) (citations omitted).) "Intangible harms and a 'risk of real harm' can be sufficiently concrete." (*Id.*) (citations omitted).

Here, Plaintiff Herrera admits that he has not applied for EMT certification because *he thinks* it would be futile. He has not sought relief under newly enacted Penal Code §1203.4b because *he elects* not to file (or obtain an attorney) a petition before a Court empowered to grant discretionary relief.

Plaintiff Herrera's failure to even apply for, and, failure to allege that he has been denied EMT Certification renders his alleged injury not real or not concrete; his claims are barred by the doctrine of ripeness.

### C. Plaintiff Herrera Lacks Standing to Assert any Action against KEPPLE

"[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III." (*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).) Standing is therefore a "threshold question" in "determining the power of the court to entertain the suit." (*Warth v. Seldin*, 422 U.S. 490, 498 (1975).) To establish standing, Plaintiff must show that: (1) he suffered an injury in fact, i.e., an injury that is sufficiently concrete and particularized and actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged conduct; and (3) the injury is likely to be "redressed by a favorable decision." *Id.* at 560-61. The "concrete and actual or imminent harm" standard is coupled with a required showing of "likelihood that Plaintiff will again be wronged in a similar way." (*Id.* at 560; *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1974).) The injury in fact test "requires that the party seeking review be himself among the injured." (*Sierra Club v. Morton*, 405 U.S. 727, 734–35 (1972).)

Plaintiff Herrera has no standing to bring the present claims because he has applied for and been denied EMT Certification.

### D. Plaintiffs have not/cannot State a Plausible Equal Protection Claim Against KEPPLE and None Exists

The Equal Protection Clause of the Fourteenth Amendment "commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." (*City of Cleburne,* at 473 U.S. at

- 11 -

439, (quoting U.S. Const., amend. XIV, § 1).  The equal protection guarantee is in tension with the reality that laws almost inevitably draw lines between groups of people, advantaging some and disadvantaging others.  (*Romer v. Evans,* 517 U.S. 620, 631(1996); *Latta v. Otter*, 19 F.Supp.3d 1054, 1072–73 (D. Idaho), *aff'd*, 771 F.3d 456 (9th Cir. 2014).)

"[A] statute constitutionally can prohibit an individual from practicing a lawful profession only for reasons related to his or her fitness or competence to practice that profession." (*Hughes v. Board of Architectural Examiners,* 17 Cal.4th 763, 788 (1998).) Thus, the state can impose discipline on a professional license only if the conduct upon which the discipline is based relates to the practice of the particular profession and thereby demonstrates an unfitness to practice such profession. "There must be a logical connection of licensees' conduct to their fitness or competence to practice the profession or to the qualifications, functions, or duties of the profession in question." (*Clare v. State Bd. of Accountancy*,10 Cal.App.4th 294, 302 (1992); *Griffiths v. Superior Court*, 96 Cal.App.4th 757, 769 (2002) ("The conventional 'rational relationship' test is traditionally applied in cases involving occupational licensing ...."); (*D'Amico v. Board of Medical Examiners*, 11 Cal.3d 1, 17 (1974).)[2] And the conventional 'rational relationship' test is traditionally applied in cases involving occupational licensing, including those concerning the practice of the healing arts. (See *Williamson v. Lee Optical Co*., 348 U.S. 483, 488 – 489 (1955); *Blumenthal v. Board of Medical Examiners, supra*, 57 Cal.2d 228, 232- 233 (1962); *D'Amico,* 11 Cal. 3d at 17.)

The issue before this Court is whether, applying the rational basis standard, the regulation and its application preventing EMT certification to a twice convicted felon violates the Equal Protection Clause as Plaintiffs claim.[3]

---

[2]  Courts have employed strict scrutiny in certain occupational licensing cases, but only when suspect classifications were involved. (See, e.g., *In re Griffiths,* 413 U.S. 717, 721–722 (1973), (applying strict scrutiny to a classification based on alienage); *Sail'er Inn, Inc. v. Kirb,* 5 Cal.3d 1, 17 (1971) (applying strict scrutiny to a classification based on sex).) Such is not the case here.

[3] Notably, Plaintiff Gurrola is more than a "twice-convicted" felon.  As shown by the ALJ decision, Plaintiff admitted to multiple prior felonies and misdemeanors. He now pleads as though these prior convictions "no longer count" because dismissed pursuant to California Penal Code section 1203.4.  However, the existence and nature of these allegedly dismissed prior convictions could be considered in connection with Plaintiff's application for EMT certification. Contrary to Plaintiff's claims, the consequence of dismissal of a conviction under section 1203.4 is that the convicted person, is, with certain exceptions, released from all penalties and disabilities resulting from the offense of which he or she had been convicted. A dismissal under section 1203.4 is in no way equivalent to a finding of factual innocence. It simply authorizes

Here, Plaintiffs' FAC fails to state a facially plausible claim. Plaintiffs' status as convicted felons do not constitute a suspect class as a mater of law. No fundamental right is at stake. In addition, Plaintiffs fail to assert a plausible (or even any) claim that others similarly situated were treated differently; that KEPPLE treated Plaintiff Gurrola, and would treat Plaintiff Herrera if he were to apply to KEPPLE (or any other agency  differently than other similarly situated twice-convicted felons; e.g. that KEPPLE granted another twice-convicted felon an EMT certification and denied an EMT certification to Plaintiff Gurrola or would deny certification to Plaintiff Herrera.

The foregoing, coupled with Plaintiffs admission that KEPPLE had no choice but to follow the law in denying certifications to twice convicted felons given the state of the law, mandates that Plaintiffs' claims against KEPPLE be dismissed without leave to amend.

### E. Plaintiffs have not/cannot State a Plausible Due Process Claim Against KEPPLE

"To satisfy due process requirement that a statute can only prohibit an individual from practicing a lawful profession for reasons related to fitness or competence, there must be a logical connection of a licensee or applicant's conduct to their fitness or competence to practice the profession, or to the qualifications, functions, or duties of the profession in question. (U.S. Const. Amend. 14; *Griffiths,* 96 Cal.App.4th at 769.)  The issue before this Court is whether, applying the rational basis test, the regulation precluding Plaintiffs or any twice-convicted (here multi-time convicted felons) EMT certification constitutes a denial of due process.

Again, as stated above, Plaintiffs are not members of a "suspect class" and the alleged right to pursue a chosen occupation is not a fundamental right.  Given the absence of a fundamental right, due process requires that the practice (here of denying EMT certifications to twice-convicted felons)

---

relief to one who successfully completed the terms of probation by mitigating some of the consequences of conviction; it does not "expunge" the prior conviction; the statute does not purport to render the conviction a legal nullity; it does not obliterate the fact that a defendant was "finally adjudged convicted of a crime. (See *Skulason v. California Bureau of Real Estate,* 14 Cal.App.5th 562 (2017) quoting, *Baranchik v. Fizulich,* 10 Cal.App.5th 1210, 1225 (2017).)  A dismissal under section 1203.4 does not relieve the ex-offender of the obligation to disclose the conviction in response to any direct question in any questionnaire or application for public office or for licensure by any state of local agency. (*Id.)* In fact, section 1203.4 provides that in any subsequent prosecution for any other offense, the prior conviction may be pleaded and proved and shall have the effect as if probation had not been granted or the accusation or information dismissed. (*Baruchik,* 10 Cal.App.5th at 1225.)

be rationally related to a legitimate state interest or is neither arbitrary or capricious. (*Lee v. City of Chicago,* 330 F.3d 456, 461 (7th Cir 2003).)

The California legislature has vested Duncan (California Emergency Medical Services Authority (EMSA)) with the authority to pass regulations concerning EMT certification to ensure the health and safety of the public. The EMSA has determined a nexus exists between two or more felony convictions and the duties of an EMT. And, KEPPLE is bound to follow the law.

Factually, central to the analysis is whether the nature of Plaintiffs' prior criminal convictions were "substantially related" to their fitness to work as an EMT, a position of trust and confidence imposed on one working with vulnerable persons (e.g. severely ill, accident, or otherwise injured individuals, many of whom may be unconscious). (See *Moustafa v. Board of Registered Nursing,* 29 Cal.App.5th 1119 (2018) (wherein a nursing applicant's conduct as a shoplifter was found to be substantially related to her fitness to the practice of nursing; this unprofessional conduct was found to support restricting the claimant's nursing license because nurses are held in positions of extreme trust and confidence with access to property of others, including the property of vulnerable patients); also, *Griffiths,* 96 Cal.App.4th at 757, concluding that a physician discipline statute that defined unprofessional conduct as more than one misdemeanor conviction involving alcohol consumption did not violate due process.) Clearly, Plaintiff fails to allege a plausible Due Process claim against KEPPLE. As to Plaintiff Gurrola his violent crimes, at least one of which occurred while Plaintiff was under the influence of alcohol and drugs and alcohol related convictions are substantially related to fitness to work as an EMT. As to Plaintiff Herrera, his violent crime and later witness tampering (again through use of violence) are substantially related to his fitness to work as an EMT.

To the extent that Plaintiffs allege "procedural" due process claims, Plaintiff Gurrola fails to state a plausible claim given his admitted participation in a hearing regarding denial of his EMT certification and own failure to access available avenues of redress. Plaintiff Herrera's failure to even apply for EMT Certification in addition to his admitted election to not seek relief under newly enacted Penal Code § 1203.4b belies a procedural due process claim. Plaintiffs' inability to state a

- 14 -

DEFENDANT JEFFREY KEPPLE'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT PURSUANT TO FED.
RULE OF CIV. PROC., SECTION 12(b)(6)

plausible due process claim against KEPPLE mandates dismissal of this claim against KEPPLE without leave to amend.

### F. Plaintiffs' Purported "Privileges Or Immunities" Claim Is Unintelligible

Plaintiffs FAC acknowledges that the asserted claim under the Privileges and Immunities Clause is "foreclosed by the *Slaughter-House Cases,* 83 U.S. (16 Wall.) 36 (1873)." (FAC p. 26, ¶214, 8-13.) Accordingly, Plaintiffs' claim styled "Privileges and Immunities" fails as a matter of law and must be dismissed.

## VI. CONCLUSION

Plaintiffs utter failure to plead facts sufficient to state claims for relief against KEPPLE that are plausible on their face mandates KEPPLE's dismissal from this action. The alleged facts and claims, taken in the light most favorable to Plaintiffs, reveal that Plaintiffs' action against KEPPLE is barred by the doctrines of res judicata and collateral estoppel, ripeness, standing, etc. and Plaintiffs are not entitled to relief against KEPPLE under any theory.  KEPPLE is required to adhere to and follow 22 Cal. Code Regs. §100214.3(c)(3) and (c)(6) as a matter of law, and each Plaintiff may avail himself of the relief provided under Penal Code §1203.4b.

KEPPLE respectfully requests that this Court dismiss the FAC and each and every claim asserted KEPPLE, without leave to amend.

Dated:  October 28, 2020                    KAUFMAN DOLOWICH & VOLUCK, LLP


BY: /s/ *Barbara L. Harris Chiang*
    Barbara L. Harris Chiang
    Elizabeth Williams
    Attorneys for Defendant JEFFREY KEPPLE, in his official capacity as Medical Director of Northern California EMS, Inc.